James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068-1739
(973) 994-1700

Howard F. Silber, Esq.
THE LAW OFFICES OF HOWARD F. SILBER
2625 Townsgate Road, Suite 330
Westlake Village, CA 91361
(818) 706-8510

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL PELUSO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY DEVILS, LLC, MEADOWLANDERS INC., DR. MARVIN I. RUDERMAN, DR. BARRY FISHER, DR. LEN JAFFE, and LOU LAMORIELLO<br><br>Defendants. | Civil Action No.<br><br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Michael "Mike" Peluso, through his undersigned counsel, brings this Complaint against the New Jersey Devils, LLC ("Team Defendant"), Dr. Barry Fisher, Dr. Marvin Ruderman, Dr. Len Jaffe and Lou Lamoriello (together with the Team Defendant, "Defendants") as follows:

## INTRODUCTION

1.      This action arises out of the Defendants breaches of their legal duties to Plaintiff Mike Peluso which has caused him to suffer significant and permanent brain injuries including

nine grand mal seizures, early onset demential, total and permanent disability in the workplace, all signs of being afflicted with Chronic Traumatic Encephalopathy (CTE), as well as other severe neurological and psychological impairment. These actions were an intentional wrong inflicted by Defendants on the Plaintiff. These acts were done with substantial certainty that they would cause the injuries sustained by Plaintiff herein.

2.      More specifically Defendants intentionally, deliberately, fraudulently, and with callous disregard for Mr. Peluso's health and safety, concealed from Plaintiff the true extent of his brain injury from February 14, 1994, and continually thereafter. Not only for the balance of plaintiff's professional hockey career which ended in in 1998, but throughout the course of his retirement up and until 2016. The Team Defendant and its medical staff allowed Plaintiff to play hockey and fight exposing Plaintiff to further brain injury. All the while in receipt of medical reports outlining the injury and this danger from the team's contracted neurologist defendant Dr. Marvin Ruderman that has put his mental health and life in danger. The report stated that Plaintiff should not sustain any further trauma to his head or he will suffer additional seizures and long-lasting brain damage. Mr. Peluso now suffers from dementia from injuries to his brain resulting in permanent mental incapacity as a direct result of Defendants' callous actions after the receipt of the neurologist's report in January 1994.

3.      Defendants did more than ignore these warnings provided by their board-certified neurologist after Mr. Peluso had his first grand mal seizure in 1994 and after they were armed with this knowledge, they did not inform Mr. Peluso nor they did not take any measures to protect Mr. Peluso; and they hid this knowledge for years, including during the balance of plaintiffs NHL hockey career and for years thereafter. These intentional actions by Defendants were done with knowledge and with substantial certainty that further brain damage would occur

to plaintiff by continuing his hockey career as an NHL enforcer (fighter).  The deceit included hiding these medical reports from the subsequent employers of plaintiff in the NHL. In fact, although all medical reports are required to be transferred to the next team when a player is traded, Defendants hid the report of Dr. Ruderman from the St. Louis Blues who then did not have it to pass along to plaintiff's subsequent employers in the league.

4.      Defendants conspired to and fraudulently concealed from Plaintiff Defendants' knowledge of his injury and the substantial certainty of future injury by continuing his career as an NHL enforcer.

5.      The actions of the Defendants have resulted in, among other things, early onset dementia to the now 53-year-old Plaintiff and are in fact injuries beyond anything the legislature intended to immunize under the New Jersey Workers Compensation Act and its exclusive remedy provision.

6.      However, after many years the Defendants' report of Dr. Ruderman became known to plaintiff.  Belatedly, Mr. Peluso has the same information that Defendants have had for years, *i.e.* 1) that the extent of  his brain injuries were preventable; 2) Defendants knew those brain injuries were preventable; 3) Defendants knew with substantial certainly plaintiff's brain injuries would lead to long-term, permanent brain damage; and 4) rather than prevent his head injuries and simply provide him with the information they continued to allow him to play and suffer numerous further blows to the head. Team Defendant with the aid of the doctors chose secrecy, putting their won-loss record and profits far ahead of Mr. Peluso's health.

7.      Further, as a direct result of Defendants' actions, Defendants caused, and continue to cause serious physical and emotional distress to Mr. Peluso.  Every single day he suffers with the reality that the doctors could have prevented his chronic seizure disorder, dementia and

permanent brain damage. These actions not only cause great emotional distress to Mr. Peluso's as of today, but every single day the distress increases.

8.      This is not simply a case where Defendants are alleged to know the link between head injuries and permanent brain damage as was the NHL Concussion litigation. This is a case where Defendants knew of Mr. Peluso's head injuries and his brain damage and allowed it to become much more severe and permanent.

**PARTIES**

9.      Mr. Peluso is a resident and citizen of the State of Minnesota. He was employed as a professional hockey player in the NHL at various times and locations from 1990 until 1998.

10.      Mike Peluso was one of the toughest and fiercest enforcers in NHL history. Plaintiff played in the NHL from 1989 to 1998. Mr. Peluso played from: September 7, 1989 to June 18, 1992 for the Chicago Blackhawks and its affiliates; June 18, 1992 to June 26, 1993 for the Ottawa Senators; June 26, 1993 to November 26, 1996 for the New Jersey Devils; November 26, 1996 to June 21, 1997 for the St. Louis Blues; June 21, 1997 to September 28, 1997 for the New York Rangers; and September 28, 1997 to December 30, 1997 for the Calgary Flames.

11.      Mr. Peluso played in 458 NHL games as an enforcer. An enforcer is a position in hockey where the primary job duty is to protect the skilled players, by initiating and engaging in bare-knuckled fist fights with the fighters from the opposing team.  Plaintiff was in a total of 240 fights in those 458 NHL games. Plaintiff was assessed 1,951 penalty minutes during his NHL career and is one of only four NHL players to incur over four hundred penalty minutes in one season. Plaintiff scored only 38 goals in his entire NHL career. He was put on the ice to fight.

12.      Plaintiff was part of the famed "Crash Line" with the New Jersey Devils of the mid 1990s—known for their unwavering loyalty to following the directions of their coaches to

protect skilled players at all costs, including through violence. They were coached to protect the scorers without regard for their own safety.

13.     With the encouragement and under the direction of the Team Defendant, and without any warnings about his already damaged brain (known by Defendants), Plaintiff participated in hundreds of bareknuckle fights. Plaintiff received body checks, slashes from hockey sticks, blows delivered by fists, elbows and other body parts, to his head and body during the course of games and practices both before and after Defendants knew of his brain trauma.

14.     Mr. Peluso currently suffers from permanent damage to the right side of his brain (he was a left-handed fighter) and absorbed the majority of punches to the right side of his brain); has suffered nine grand mal seizures; has early onset dementia at the young age of 53, and struggles daily with depression, anxiety, memory loss and the constant threat of more seizures. Plaintiff also exhibits all signs of someone suffering from CTE.

15.     Mr. Peluso has spent more than $100,000.00 to date on medical bills, anti-seizure medications, and for costs related to the seizures such as ambulance and hospitalization since his retirement from the NHL in 1998. It is anticipated that over the course of his lifetime, the cost of his future medical care be in the millions of dollars.

16.     Defendant New Jersey Devils are a limited liability corporation incorporated under the laws of Delaware with its principal place of business at 25 Lafayette St., Newark, New Jersey 07102. Upon information and belief, no member of the New Jersey Devils LLC is a citizen of Minnesota.

17.     The MEADOWLANDERS INC. is a corporate name used to operate certain business aspects of the New Jersey Devils.

18.     Defendant Dr. Martin Ruderman is citizen of New Jersey residing in Roseland, New Jersey.

19.     Defendant Dr. Barry Fisher is a citizen of New Jersey.

20.     Dr. Len Jaffee is an individual who resides in New Jersey. At all times herein he was a team doctor for the New Jersey Devils.

21.     Lou Lamoriello is an individual and at all times herein relevant was the General Manager of the New Jersey Devils, and was their "Governor" on the National Hockey League Board of Governors.  For all intent and purpose Lou Lamoriello ran the New Jersey Devils.

## JURISDICTION AND VENUE

22.     Jurisdiction is based on 28 U.S.C. § 1332(a)(1) in that Plaintiffs and Defendants are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events or omissions that give rise to the claims occurred within this District.

## STATEMENT OF FACTS

24.     On December 18, 1993, while playing for the New Jersey Devils, Mr. Peluso played a game against the Quebec Nordiques, in Quebec, Canada.

25.     During the game, Mr. Peluso was punched in the head and knocked unconscious by opposing player Tony Twist, and his head slammed against the ice. Mr. Peluso had to be carried off the ice into the locker room. While in the locker room, team staff observed that Mr. Peluso was suffering from memory loss, *i.e.*, he repeatedly showered and got dressed in the locker room, forgetting he had already showered. While in the locker room, Mr. Peluso also

experienced headaches, dizziness and nausea. As a result, Mr. Peluso was hospitalized for two days in Quebec after the incident. Pictures of the fight are attached hereto and incorporated by this reference as Exhibit A.

26.     Video of the incident below – December 18, 1993

        *YouTube Video*: https://www.youtube.com/watch?v=N34jPRwd0AA

27.     The injury report following the Devils-Nordiques game reveals that Mr. Peluso sustained a concussion and laceration from the fight and was hospitalized overnight. The Report also appears to indicate that the same evening Mr. Peluso was cleared to play.  A true and correct copy of this injury report is attached hereto as Exhibit B.

28.     Despite plaintiff concussion, hospital stay, having been knocked unconscious in Quebec and exhibiting signs of memory loss, Mr. Peluso was forced to come back to work for the Devils immediately at the direction of Lou Lamoriello. Mr. Peluso's head coach informed him that the opposing team had six "linebackers" and Mr. Peluso was needed to protect the skilled players that evening. Mr. Peluso complied and played in a game against the Toronto Maple Leafs. During that game, Mr. Peluso was hit in the head in a fight by opposing player Ken Baumgartner and sustained further head injury.

| Player | Height | Weight | Punches Thrown | Punches Landed |
|---|---|---|---|---|
| **Ken Baumgartner** | 6'1" | 205 lbs | 8 | 1 |
| **Mike Peluso** | 6'4" | 225 lbs | 6 | 2 |

29.     Less than two months later, having now participated in games and practices as if nothing had happened on December 18, 1993, Plaintiff while working out with his team the day following a game in St. Petersburg, Florida, suffered a grand mal seizure on February 14, 1994.

The New Jersey Devils' team trainer provided Mr. Peluso with a bottle of Tegretol, an anti-seizure medication.

30.     A mere four days later Lou Lamoriello, the general manager and president of Defendant New Jersey Devils was already distorting the facts of what had occurred to Plaintiff and the public. According to a New York Times article at the time:

> MIKE PELUSO will have more tests Friday in New Jersey to determine the cause of seizure he suffered on Monday during the team's mini-vacation in Florida. LOU LAMORIELLO, the president and general manager of the Devils, said the seizure was primarily due to dehydration and lack of nutrition. But the Devils are concerned that it could be related to a concussion Peluso suffered in Quebec Dec. 18. Peluso banged his head on the ice during a fight with TONY TWIST of the Nordiques and was kept overnight in a hospital for observation.

31.     Immediately after the hospitalization in Quebec, Plaintiff was back on the ice. In fact, he was a participant in five fights after the hospitalization and before the seizure incurring ten punches to the head.  He was even back on the ice and in a fight a mere six days after the seizure and only two days after Plaintiff had been seen by the Team Defendant's chosen neurologist on February 18, 1994. At no time did the Team Defendant, Defendant Dr. Ruderman, Dr. Fisher, Dr. Jaffee or Lou Lamoriello stop Plaintiff from playing or fighting. Plaintiff was always cleared to play and fight by the Devils.

32.     Plaintiff's fight record from December 18, 1994 to February 20, 1994 is as follows:

| # | Date | League | Game | Opponent |
|---|------|--------|------|----------|
| 1993 | | | | |
| X | Dec 18 | NHL | NJD-Que | Tony Twist |
| 1 | Dec 23 | NHL | Tor-NJD | Ken Baumgartner |
| 1994 | | | | |

| 2 | Jan 4 | NHL | NYI-NJD | Dean Chynoweth |
|---|---|---|---|---|
| 3 | Jan 19 | NHL | NJD-Win | Dean Kennedy |
| 4 | Jan 26 | NHL | NJD-Edm | Kelly Buchberger |
| 5 | Feb 2 | NHL | Buf-NJD | Matthew Barnaby |
| **February 14: Peluso suffers grand mal seizure** <br> **February 18:   Peluso examined by Dr. Ruderman** | | | | |
| 6 | Feb 20 | NHL | NJD-Chi | Cam Russell |
| **February 21: Ruderman Report** | | | | |

33.     From the New York Times, February 20th, 1994:

> MIKE PELUSO , who went into a seizure last Monday as a result of dehydration, returned to the lineup after receiving clearance from the Devils' doctors. . . . STEPHANE RICHER developed a sore back this morning and was scratched. . . . JASON SMITH was the other scratch for the Devils, who were left with 22 players after BEN HANKINSON made his sixth trip to the team's top affiliate in the minor leagues, the Albany River Rats of the American Hockey League.

34.     On February 21, 1994, Dr. Ruderman issues a report finding that Plaintiff's seizure was as a result of the concussions suffered in the Twist fight in Quebec on December 18, 1993 and that he was substantially certain if Plaintiff continued to play he would suffer further seizures. Mr. Peluso who was obviously suffering from post-concussion syndrome at the time, and has no memory of being sent to Dr. Ruderman. The report was in fact sent by the neurologist to the New Jersey Devils on February 21, 1994. Dr. Marvin I. Ruderman, expressly warned the New Jersey Devils that if Plaintiff were subjected to additional head injuries, Plaintiff would have long-term brain damage and additional seizures. A true and correct copy of the Ruderman Report is attached hereto as Exhibit C.

35.     Dr. Ruderman forwarded his report to team officials and team doctors. Dr. Ruderman sent his report to 1) the Devils' General Manager, Lou Lamoriello; 2) the Devils' team doctor, Dr. Barry Fisher; and 3) the Devils' orthopedic surgeon, Dr. Leonard Jaffe. However, Mr. Peluso was not provided a copy of the report. In fact, neither Mr. Peluso or his

subsequent NHL employers were informed of the contents of the report at any time during his career.

36.     The report found that Mr. Peluso was at risk of long term neurological problems and a chronic seizure disorder if the New Jersey Devils allowed him to sustain any additional hits to his head. Further, the report stated that Mr. Peluso's February 14, 1994 grand mal seizure was directly related to his December 18, 1993 concussion and not to "dehydration", as concluded by the New Jersey Devils' GM Lou Lamoriello.

37.     In August 2015, Mr. Peluso stated to NJ.com:

"its' how they threw me out onto the ice, I'd had a grand mal seizure and Dr. Fisher handled the situation and said I was good to go" Peluso told NJ Advance Media about a serious incident in 1993. "I heard (trainer) Teddy Schuch say 'I don't think he's ready,' but Teddy was overruled by Dr. Fisher.

I should have seen a neurologist. When the doctor clears you, you think you're healthy. What is a team doctor for? I'm not a doctor. If you're a goal-scorer and you have a concussion, maybe for a couple of weeks you can stay out of traffic. For me it was like being a gunslinger with no gun. That was my role."

38.     On about February 20, 1994, and after having Plaintiff see Dr. Ruderman, the New Jersey Devils sent Mr. Peluso back to work and kept him on the ice and continued to do so after the receipt of the Ruderman report despite his documented certainty to additional head injuries and brain trauma.

39.     The Team Defendant, and the doctors including Defendant Ruderman despite knowing the likelihood of repeated head trauma to enforcers like Mr. Peluso, willfully and callously disregarded Mr. Peluso's safety by agreeing to conceal, and concealing, the severe risk posed to Mr. Peluso's health if he continued playing as well as the extent of his injury.

40.     The New Jersey Devils intentionally misrepresented Plaintiff condition and informed Mr. Peluso he was fit to return to play, pushed him to return to his duties, and

instructed him to continue his role as the team's enforcer. All the while the team doctors and Dr. Ruderman sat silent.

41.     Had Mr. Peluso been made aware of the severe injury and risk identified by Dr. Ruderman, he would not have continued his career as a professional hockey player. Unfortunately, no Defendant nor the doctors ever informed him that he was at excessive risk of further seizures or permanent brain damage if he were to sustain more head injuries and that is exactly what occurred due to the Defendants' deceitful actions.

42.     Plaintiff, ignorant of the critical medical information the Defendants concealed from him, continued his professional hockey career as an enforcer. He was subsequently acquired or signed by the St. Louis Blues, New York Rangers and Calgary Flames through a series of trades.

43.     The St. Louis Blues Blue's, New York Rangers and Calgary Flames were not provided with this crucial prior medical record. Each of them, continued to unknowingly subject the Plaintiff to certain brain injury due to Defendants' deceit.

44.     Defendants, the St. Louis Blue's Blues, New York Rangers and Calgary Flames also each informed Mr. Peluso that he was fit to perform, as a hockey player, his duties as an enforcer in order to continue profiting off the marketed violence of NHL hockey.

45.     Despite Defendants having the information that Mr. Peluso could not sustain any further head injuries, and hiding this vital information from Plaintiff, Mr. Peluso went on to play in three hundred and seventeen games resulting in hundreds of additional head injuries, including concussions. Plaintiff participated in 100 additional fights after February 21, 1994 to his last game on November 23, 1998.

46.     The Team Defendant permitted and encouraged Mr. Peluso to engage in 100 subsequent fights after February 21, 1994. The Team Defendant knew, of course, that continued fighting would result in further trauma to Mr. Peluso's head. The Team Defendant also knew Mr. Peluso would be exposed to extreme risk of serious injury simply by continuing his career as a professional hockey player.

47.     The Team Defendant intentionally agreed to, and did, conceal Mr. Peluso's condition as well as the risks of repetitive head trauma from him in order to continue making billions of dollars by profiting from fighting and violence.

48.     The fights that Mr. Peluso participated in at the request of the Team Defendant or his subsequent NHL employers after the December 18, 1993 concussion, and the February 14, 1994 seizure, and the Ruderman report are as follows:

**Mike Peluso NHL Fights after December 18, 1993 concussion with the New Jersey Devils**

| # | Date | League | Game | Opponent |
|---|------|--------|------|----------|
| | 1993 | | | |
| X | Dec 18 | NHL | NJD-Que | Tony Twist |
| 1 | Dec 23 | NHL | Tor-NJD | Ken Baumgartner |
| | 1994 | | | |
| 2 | Jan 4 | NHL | NYI-NJD | Dean Chynoweth |
| 3 | Jan 19 | NHL | NJD-Win | Dean Kennedy |
| 4 | Jan 26 | NHL | NJD-Edm | Kelly Buchberger |
| 5 | Feb 2 | NHL | Buf-NJD | Matthew Barnaby |
| **February 14th: Peluso suffers grand mal seizure** | | | | |
| 6 | Feb 20 | NHL | NJD-Chi | Cam Russell |
| **February 21st: Ruderman Report** | | | | |
| 7 | Feb 28 | NHL | StL-NJD | Kelly Chase |
| 8 | Feb 28 | NHL | StL-NJD | Kelly Chase |
| 9 | Mar 5 | NHL | Cgy-NJD | Sandy McCarthy |
| 11 | Mar 17 | NHL | NJD-Buf | Ken Sutton |
| 12 | Mar 19 | NHL | NJD-Bos | Jamie Huscroft |
| 13 | Apr 12 | NHL | NJD-Phi | Rob Zettler |

| 14 | Apr 14 | NHL | Ott-NJD | Dennis Vial |
|----|--------|-----|---------|-------------|
| 15 | Apr 17 | NHL | Buf-NJD | Brad May |
| 16 | Apr 23 | NHL | NJD-Buf | Rob Ray |
| 17 | Apr 23 | NHL | NJD-Buf | Rob Ray |
| 18 | Apr 23 | NHL | NJD-Buf | Rob Ray |
| 19 | May 21 | NHL | NYR-NJD | Jeff Beukeboom |
| 20 | Sep 20 | NHL | NJD-NYI | Rich Pilon |
| 1995 | | | | |
| 21 | Jan 25 | NHL | NJD-Buf | Doug Houda |
| 22 | Jan 26 | NHL | NJD-Bos | David Shaw |
| 23 | Jan 28 | NHL | NJD-Mtl | Lyle Odelein |
| 24 | Feb 4 | NHL | NJD-Que | Adam Deadmarsh |
| 25 | Feb 12 | NHL | NJD-Fla | Scott Mellanby |
| 26 | Feb 12 | NHL | NJD-Fla | Paul Laus |
| 27 | Feb 15 | NHL | Wsh-NJD | Rob Pearson |
| 28 | Feb 17 | NHL | NYI-NJD | Mick Vukota |
| 29 | Feb 18 | NHL | NJD-NYI | Mick Vukota |
| 30 | Feb 20 | NHL | NJD-Wsh | Kevin Kaminski |
| 31 | Feb 27 | NHL | Mtl-NJD | Lyle Odelein |
| 32 | Mar 2 | NHL | NJD-Bos | Brent Hughes |
| 33 | Mar 2 | NHL | NJD-Bos | Daniel Lacroix |
| 34 | Mar 8 | NHL | NJD-NYR | Darren Langdon |
| 35 | Mar 19 | NHL | Bos-NJD | Jamie Huscroft |
| 36 | Mar 26 | NHL | NJD-NYI | Mick Vukota |
| 37 | Mar 29 | NHL | NJD-Ott | Scott Levins |
| 38 | Apr 12 | NHL | NJD-Wsh | Kevin Kaminski |
| 39 | Apr 22 | NHL | Phi-NJD | Shawn Antoski |
| 40 | Apr 28 | NHL | Fla-NJD | Paul Laus |
| 41 | Jun 10 | NHL | Phi-NJD | Kevin Dineen |
| 42 | Sep 18 | NHL | NYR-NJD | Nick Kypreos |
| 43 | Sep 18 | NHL | NYR-NJD | Daniel Lacroix |
| 44 | Sep 18 | NHL | NYR-NJD | Eric Cairns |
| 45 | Sep 26 | NHL | NYI-NJD | Mick Vukota |
| 46 | Oct 12 | NHL | Win-NJD | Jason Doig |
| 47 | Oct 28 | NHL | Pit-NJD | Chris Tamer |
| 48 | Nov 2 | NHL | NJD-SJS | Jeff Odgers |
| 49 | Nov 8 | NHL | Cgy-NJD | Jamie Huscroft |

| 50 | Nov 12 | NHL | NJD-Phi | Shawn Antoski |
|----|--------|-----|---------|---------------|
| 51 | Nov 18 | NHL | Buf-NJD | Rob Ray |
| 52 | Dec 1 | NHL | TBL-NJD | Rudy Poeschek |
| 53 | Dec 6 | NHL | NJD-Mtl | Lyle Odelein |
| 54 | Dec 15 | NHL | NJD-Det | Keith Primeau |
| 55 | Dec 16 | NHL | Buf-NJD | Matthew Barnaby |
| 56 | Dec 16 | NHL | Buf-NJD | Brent Hughes |
| 57 | Dec 31 | NHL | NJD-Chi | Jim Cummins |
| 1996 | | | | |
| 58 | Jan 9 | NHL | StL-NJD | Tony Twist |
| 59 | Jan 14 | NHL | Dal-NJD | Shane Churla |
| 60 | Jan 30 | NHL | NJD-Van | Gino Odjick |
| 61 | Feb 3 | NHL | NJD-Ott | Dennis Vial |
| 62 | Feb 11 | NHL | MDA-NJD | Dave Karpa |
| 63 | Feb 21 | NHL | Fla-NJD | Radek Dvorak |
| 64 | Apr 2 | NHL | NJD-NYR | Shane Churla |
| 65 | Sep 16 | NHL | NJD-NYR | Darren Langdon |
| 66 | Sep 16 | NHL | NJD-NYR | Eric Cairns |
| 67 | Sep 16 | NHL | NJD-NYR | Sylvain Blouin |
| 68 | Sep 26 | NHL | NJD-Det | Darren McCarty |
| 69 | Sep 28 | NHL | NYR-NJD | Jeff Beukeboom |
| 70 | Oct 7 | NHL | NJD-Phi | Scott Daniels |
| 71 | Oct 7 | NHL | NJD-Phi | Dan Kordic |
| 72 | Oct 19 | NHL | NJD-Har | Keith Primeau |
| 73 | Oct 29 | NHL | NJD-Bos | Trent McCleary |
| 74 | Oct 30 | NHL | NYR-NJD | Eric Cairns |
| 75 | Nov 7 | NHL | NJD-Chi | Jim Cummins |
| 76 | Nov 9 | NHL | NYI-NJD | Mick Vukota |
| 77 | Nov 19 | NHL | NJD-Ott | Phil Crowe |

**Mike Peluso NHL Fights after the December 18, 1993 concussion with the St. Louis Blues**

| 1 | Nov 27 | NHL | StL-MDA | Warren Rychel |
|---|--------|-----|---------|---------------|
| 2 | Dec 1 | NHL | SJS-StL | Andrei Nazarov |
| 3 | Dec 3 | NHL | StL-Tor | Tie Domi |
| 4 | Dec 8 | NHL | StL-Edm | Kelly Buchberger |
| 5 | Dec 11 | NHL | StL-Dal | Todd Harvey |
| 6 | Dec 21 | NHL | StL-Phi | Karl Dykhuis |

| 7 | Dec 22 | NHL | LAK-StL | Brad Smyth |
|---|---|---|---|---|
| 1997 | | | | |
| 8 | Jan 20 | NHL | StL-NYI | Steve Webb |
| 9 | Jan 25 | NHL | StL-Mtl | Chris Murray |
| 10 | Feb 8 | NHL | StL-Bos | Dean Chynoweth |
| 11 | Feb 23 | NHL | Cgy-StL | Todd Simpson |
| 12 | Feb 27 | NHL | StL-Fla | Paul Laus |
| 13 | Mar 13 | NHL | StL-LAK | Sean O'Donnell |
| 14 | Apr 1 | NHL | StL-Det | Darren McCarty |
| 15 | Apr 3 | NHL | NYI-StL | Ken Belanger |
| 16 | Apr 22 | NHL | Det-StL | Jamie Pushor |
| 17 | Apr 22 | NHL | Det-StL | Slava Kozlov |

**Mike Peluso NHL Fights after the December 18, 1993 concussion with the New York Rangers**

| 1 | Sep 15 | NHL | Tor-NYR | Kelly Chase |
|---|---|---|---|---|
| 2 | Sep 22 | NHL | NYR-Cgy | Todd Simpson |
| 3 | Sep 23 | NHL | NYR-SJS | Marty McSorley |

**Mike Peluso NHL Fights after the December 18th, 1993 concussion with the Calgary Flames**

| 1 | Oct 3 | NHL | Col-Cgy | Wade Belak |
|---|---|---|---|---|
| 2 | Oct 9 | NHL | NYR-Cgy | Ryan VandenBussche |
| 3 | Oct 22 | NHL | Cgy-Buf | Rob Ray |
| 4 | Oct 23 | NHL | Cgy-Phi | Luke Richardson |
| 5 | Nov 2 | NHL | Cgy-Phx | Jim McKenzie |
| 6 | Nov 10 | NHL | Cgy-Chi | Bob Probert |
| 7 | Nov 20 | NHL | Cgy-Fla | Paul Laus |
| 8 | Nov 22 | NHL | Cgy-TBL | Louie DeBrusk |
| 9 | Nov 23 | NHL | Cgy-Car | Stu Grimson |

Total NHL fights involving Plaintiff subsequent to the December 18, 1993 concussion:

1) New Jersey Devils:          77

2) St. Louis Blues:            17

3) New York Rangers:           3

4) Calgary Flames:             9

Total:          106

Total NHL fights involving Plaintiff subsequent to February 21, 1994 Ruderman report:

Total:          95

49.   Videotape evidence of head injuries sustained by Mr. Peluso in hockey fights after the neurological report is given to the Team Defendant include:

- December 23, 1993, Newark, New Jersey (*after Defendants are told Mr. Peluso can no longer sustain head hits*)

  o   https://youtu.be/ZaCxi5pQJvg

- January 19, 1994, Winnipeg, Canada (*after Defendants are told Mr. Peluso can no longer sustain head hits*)

  o   https://youtu.be/5EgGWrsHdPw

- January 26, 1994, Edmonton, Canada (*after Defendants are told Mr. Peluso can no longer sustain head hits*)

  o   https://youtu.be/5EgGWrsHdPw

- February 2, 1994, Edmonton, Canada (*after Defendants are told Mr. Peluso can no longer sustain head hits*)

  o   https://youtu.be/MML72I-RGA8

- November 2, 1995, San Jose, California (*after Defendants are told Mr. Peluso can no longer sustain head hits*)

  o   https://m.youtube.com/watch?v=L9TUylAGAYM

- March 13, 1997, Los Angeles, California (*after Defendants are told Mr. Peluso can no longer sustain head hits*)

  o   https://www.youtube.com/watch?v=x7vxcdSlTO

50.   As a result of Defendants' actions, Plaintiff suffers from major neurocognitive disorder, has permanent neuropsychological dysfunction and continues to have seizures.

51.   As a result of Defendants' actions, Mr. Peluso has undergone certain medical tests and evaluations. Dr. Kerri J. Lamberty reviewed over 1,500 pages of medical records and spent 6

hours in face–to–face evaluation of Mr. Peluso.[1] The results showed that Mr. Peluso's neurological condition is rapidly deteriorating. Dr. Lamberty made findings and recommendations as a result of Mr. Peluso's brain injuries that include "recommend[ing] referral to a traumatic brain injury program," "strongly recommend[ing] that Mr. Peluso be referred for psychiatric and psychological evaluation and treatment," and indicating that Mr. Peluso had significant problems obtaining employment as a result of his condition.

52.   Dr. Lamberty found that Mr. Peluso:

[S]ustained a number of concussions and sub-concussive blows throughout his hockey career…..
.
[T]here is indication of significant acquired neuropsychological dysfunction….
These deficits are considered to be permanent and will likely increase in the future

53.   Dr. Lamberty diagnosed Mr. Peluso with:[2]

- Major Neurocognitive disorder secondary to traumatic brain injury;

- Major Depression, Recurrent, moderate to severe; and

- Anxiety, NOS.

54.   Dr. Steven D. Stein, M.D. Plaitiff's personal Neurologist of six years reviewed Dr. Lamberty's report and then analyzed her findings based on his six years of evaluations of Mr. Peluso and issued a report stating that Mr. Peluso had signs of early onset dementia, a significant mood disorder that was preventing him from working, and anxiety NOS:

I am a neurologist who has been involved in the care of Mr. Mike Peluso since January 2011. Mr. Peluso has a seizure disorder as well as a chronic cognitive and mood disorder. In my opinion, both of these conditions are, more likely than not, related to his career as a professional hockey player. It is my understanding he has experienced numerous, significant head injuries in the course of his professional

---

[1]   Dr. Lamberty's psychometrist also conducted a 3.5-hour face–to–face evaluation of the Mr. Peluso.

[2]   *Id.*

hockey career. He recently underwent neuropsychological testing by Dr. Kerri
Lamberty. The result of this testing revealed major neurocognitive disorder as
well as evidence of major depression and anxiety. The cognitive disorder is of a
degree that it will impact day-today activities. In my opinion, these deficits would
be consistent with a developing pattern of dementia. It is also well established in
the neurology community that repeated head trauma may also be responsible for
significant mood disorders, of the type that Mike is experiencing.[3]

55.     After a failure to produce all documents in an ongoing workers compensation case
filed by Plaintiff in 2013, on or about May of 2016, Mr. Peluso's counsel in his worker's
compensation case was provided with the Ruderman neurological report for the first time. The
evidence revealed that Dr. Ruderman sent the Team Defendant a clear warning that Mr. Peluso
was at risk of long term neurological problems and a chronic seizure disorder if Defendants
allowed Mr. Peluso to sustain any additional hits to his head. Yet Defendants, with the
permission of the team doctors, and Defendant Ruderman allowed the Plaintiff to continue to
play.[4]

56.     The Team Defendant is a members of the National Hockey League ("NHL"). The
NHL along with the Team Defendant decide league wide policy and rules for all players,
including Mr. Peluso.

57.     The Team Defendant and the NHL have long promoted and profited billions of
dollars from their product by emphasizing the violence allowed by the league, including fist
fights, explosive body checks, and brawls between large groups of players on opposing teams.

58.     Despite having evidence and knowledge that fighting would result in severe
neurological injuries, the Team Defendant allowed, encouraged, and required Mr. Peluso to fight
as a condition of his employment.

---

[3]      *Id.*

[4]      *See* Dr. Ruderman's February 21, 1994 Report.

59.     Mr. Peluso received blows to his head every game and most practices. The repetitive head trauma caused irreparable harm to his brain which has resulted in numerous neurological illnesses.

50.     The Team Defendants have long known that professional hockey players are exposed to repeated head trauma and resulting brain damage but nevertheless did not inform Mr. Peluso, did not protect him, encouraged him to continue working, and concealed critical information from him.

51.     The conduct of Defendants resulted in injury to Mr. Peluso and was done intentionally with malice, fraud, oppression, intent, and with a conscious and willful disregard of Peluso's rights and safety. Defendants, individually, through their officers and directors and/or managing agents, authorized, directed, and conducted or ratified each act resulting in Mr. Peluso's harm. These acts were done with substantial certainty that they would cause the injuries sustained by Plaintiff herein.

**TOLLING OF THE STATUTES OF LIMITATIONS**

52.     Mr. Peluso could not have discovered through the exercise of reasonable diligence, did not know, and could not have known that Defendants had committed wrongdoing, including but not limited to: (i) subjecting and continuing to subject him to further injury and the imminent risk of head trauma and despite their knowledge that such trauma would have devastating and long-term negative health consequences; (ii) failing to warn him of the risks and consequences of head trauma; (iii) concealing material medical information from him which, if disclosed, would have prevented his severe neurological injuries; and (iv) failing to produce the critical information in order to and prevent proper medical care.

53.     Defendants affirmatively concealed their wrongdoing from Mr. Peluso and withheld critical information and documents. Mr. Peluso did not have this knowledge and could not have had this knowledge through reasonable diligence.

54.     Accordingly, all applicable statutes of limitations have been suspended with respect to any claims by Mr. Peluso. Moreover, Defendants are estopped from relying on any statutes of limitations defenses to this action.

55.     Bases on the intentional acts of the Defendants herein and each of them coupled with the substantial certainty that the Plaintiff would suffer further brain damage by continuing to play professional hockey after his seizure of February 14, 1994, the Plaintiff is not precluded from common law causes of action for the Defendants' intentional wrongs on the basis that he has previously filed and chosen to seek the limited relief afforded him under (California) workers compensation as it would be unruly harsh and technical application of the election of remedies doctrine. *(Millison v El Du Pont De Nemours & Co.)*

<u>**FIRST COUNT**</u>
**Fraud**
**(Against Team Defendant and Defendants Fisher and  Ruderman)**

56.     Mr. Peluso repeats the allegations in Paragraphs 1–55 as if fully set forth herein.

57.     The Team Defendant made fraudulent representations to Mr. Peluso in order to continue profiting from his services.

58.     The Team Defendant falsely informed Peluso that he was fit to continue his professional hockey career safely after his December 18, 1993 fight with Tony Twist; after his seizure of February 14, 1994; and at all times thereafter.

59.     Defendants Fisher and Ruderman also falsely informed Peluso that he was fit to continue his professional hockey career safely after his December 18, 1993 fight with Tony Twist; after his seizure of February 14, 1994; and at all times thereafter.

60.     Team Defendant falsely stated that Peluso's first grand mal seizure was a result of dehydration.

61.     The Team Defendant and Defendants Fisher and Ruderman knew these statements to be false and that Mr. Peluso was at excessive risk of additional seizures if he sustained further head trauma and the likelihood that such trauma would occur.

62.     The Team Defendantsand Dr. Ruderman intended that Mr. Peluso rely on their false statements to induce him into continuing his hockey playing career for the then benefit of the New Jersey Devils.

63.     Mr. Peluso reasonably relied on these false representations as they were made by the Team Defendant, Dr. Ruderman and Team Defendant's medical staff, who were entrusted with his physical wellbeing and safety.

64.     As a direct and proximate result, Mr. Peluso has suffered significant harm.

65.     The actions of the Team Defendant were intentional and with knowledge that continuing to play hockey in the NHL would lead to further brain damage and seizures with substantial certainty. They deliberately misrepresented Mr. Peluso's medical condition to him and fraudulently represented his risk of sustaining further neurological injuries.

66.     The Defendants further misrepresented the true risk of Mr. Peluso continuing his career as a professional hockey player. The Defendants' intentional conduct was done with oppression, fraud, and malice, and with the knowledge that future brain damage was a substantial certainty and with a conscious disregard for Mr. Peluso's rights. The injuries suffered are not

immunized by the New Jersey Workers Compensation Act. As a result, Mr. Peluso is entitled to compensatory and punitive damages in an amount to be determined at trial.

**SECOND COUNT**
**Fraudulent Concealment**
**(Against Team Defendant and Defendants Fisher and Ruderman)**

67.     Mr. Peluso repeats the allegations in Paragraphs 1–66 as if fully set forth herein.

68.     All Defendants concealed the contents of the February 21, 1994 Ruderman Neurological Report from Mr. Peluso and the danger to his health from further concussive blows to the head. The Defendants' acts were done intentionally despite the Defendants' knowledge with substantial certainty that further brain damage would be inflicted on the Plaintiff by continuing to play in the NHL.

69.     All Defendants intended Mr. Peluso to rely on their concealment of the dangers of his continuing to play hockey after the seizure occurred on February 14, 1994 which were outlined in Ruderman report of February 21, 2018.

70.     Defendants and their medical staffs had a legal obligation to disclose the dangers of continuing to play hockey in the NHL to Plaintiff and in fact should have had him declared unfit to play.

71.     If Plaintiff had known about risks of his continuing to play in the NHL as detailed in the Ruderman report, that information would have been material to Mr. Peluso's decision to continue his career as a professional hockey player or not.

72.     Mr. Peluso did not and could not have known that he had suffered a significant neurological injury and was at severe risk of further neurological injuries if he sustained any additional trauma to the head as he was not informed of the findings of Dr. Ruderman. Mr.

Peluso also did not know the true risks of sustaining head trauma if he were to continue his career as a professional hockey player as Defendants concealed this information from him.

73.     As a direct and proximate result of the Defendants' intentional and fraudulent concealment, Mr. Peluso suffered serious neurological injuries by continuing to play hockey in the NHL and to continue his role for the Team Defendant as an enforcer.

74.     Defendants' fraudulent concealment was done with oppression, fraud, and malice, and with a conscious disregard for Mr. Peluso's health and rights.  The injuries suffered are not immunized by the New Jersey Workers Compensation Act.  These acts were done with substantial certainty that they would cause the injuries sustained by Plaintiff herein.

75.     As a result, Mr. Peluso is entitled to compensatory and punitive damages in an amount to be determined at trial.

### THIRD COUNT
**Civil Conspiracy Against All Defendants**

76.     Plaintiff repeats the allegations in Paragraphs 1–75 as if fully set forth herein.

77.     All Defendants acted in concert to commit the unlawful acts described herein. All Defendants agreed with each other to inflict a wrong upon Mr. Peluso and took the overt acts described herein in furtherance of the conspiracy.

78.     The Defendants' conspiracy resulted in damage to Plaintiff in the form of severe neurological and emotional damages. Including but not limited to dementia, CTE and other brain disorders.

79.     The Defendants' conspiracy was engaged in with oppression, fraud, and malice, and with a conscious disregard for Mr. Peluso's rights. Defendants were aware with substantial certainty that further play by Plaintiff would result in further brain damage. The injuries suffered are not immunized by the New Jersey Workers Compensation Act.

80.     As a result, Mr. Peluso is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FOURTH COUNT
### Intentional Infliction Of Emotional Distress Against All Defendants

81.     Peluso repeats the allegations in Paragraphs 1–80 as if fully set forth herein.

82.     The conduct of all Defendants as described herein was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

83.     The conduct of all Defendants as described herein was reckless, in deliberate disregard of Plaintiff and with a high degree of certainty further injury and emotional distress would follow.

84.     As a proximate result of the Defendants' conduct, Mr. Peluso suffers severe emotional distress.

85.     Defendants engaged in intentional infliction of emotional distress with oppression, fraud, and malice, and with a conscious disregard for Mr. Peluso's rights. The injuries suffered are not immunized by the New Jersey Workers Compensation Act.

86.     As a result, Mr. Peluso is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FIFTH COUNT
### Gross Negligence Against All Defendants

87.     Mr. Peluso repeats the allegations in Paragraphs 1–86 as if fully set forth herein.

88.     All Defendants owed a duty of care the Plaintiff.

89.     All Defendants breached that duty in the manner discussed above.

90.     All Defendants acted with thoughtless disregard to the consequence that may follow from their failure to reveal the findings of their medical doctors including but not limited to Dr. Ruderman.

91.     The physician Defendants owed Plaintiff a duty to put his health interests above the interests of his team.  Despite the physician Defendants' obligation to fully and truthfully advise Plaintiff of his physical condition following his injuries, they failed to do so, clearing him to continue to play hockey as he had before despite the fact that doing so would, to a reasonable certainty, result in the traumatic brain injuries from which he now suffers.

92.     Mr. Peluso's injuries, as described above, were the natural and probable result of Defendants' failure to exercise the slightest of care or diligence and were substantially certain to occur.

93.     All Defendants' breach of their duty of care towards Mr. Peluso was a proximate cause of the damages he suffered and continues to suffer every day of his life. The injuries suffered are not immunized by the New Jersey Workers Compensation Act.

94.     As a result, Mr. Peluso is entitled to compensatory and punitive damages in an amount to be determined at trial.

### SIXTH COUNT
**Battery**

95.     Mr. Peluso repeats the allegations in Paragraphs 1–94 as if fully set forth herein.

96.     Hockey is a sport that inherently involves bodily contact.  Indeed, Plaintiff's primary role with his teams was to engage in forceful bodily contact with the members of other teams at the direction of his own team.

97.     After they became aware of the Ruderman Report, Defendants intended, and, indeed, directed that Plaintiff continue to engage in harmful and offensive bodily contact with the members of other teams.

98.     Plaintiff's consent to continue to engage in such harmful and offensive bodily contact was based upon the false information provided by Defendants to Plaintiff that he was physically able to continue to play hockey without risk, other than those otherwise inherent in playing hockey.

99.     Had Plaintiff known of the substantial certainty that he would incur substantial and permanent brain injuries if he continued to play hockey in the manner he had played in the past, and as directed by Defendants, he would not have consented to the harmful and offensive bodily contact inherent in playing professional hockey.

100.    The fighting and other impacts inflicted upon Plaintiff by the intentional acts of Defendants resulted in the injuries from which Plaintiff is now suffering.

101.    Those injuries were known by Defendants to be reasonably certain to arise, but, despite the certainty of such permanent brain injuries, Defendants encouraged Plaintiff to engage in conduct that they knew would result in serious physical harm, for their own economic benefit.

102.    As a result of the foregoing, Plaintiff is entitled to compensatory and punitive damages.

## SEVENTH COUNT
### Prime Facie Tort

103.    Mr. Peluso repeats the allegations in Paragraphs 1–102 as if fully set forth herein.

104.    Defendants intentionally caused injury to Plaintiff in that after they became aware of the Ruderman Report, they directed and encouraged Plaintiff to continue to play hockey

in the style and manner in which he had previously played, knowing that any additional blows to Plaintiff's head would cause him to incur permanent brain injury and knowing that Plaintiff was certain to sustain additional blows to the head.

105.    Defendants are generally culpable in that they were as certain that others would inflict blows upon Plaintiffs head as if they were inflicting the blows themselves and cause him to suffer serious and permanent brain injury.

106.    Defendants had no reasonable justification for directing and encouraging Plaintiff to play hockey in the style he had previously played, other than to make money for themselves at the expense of Plaintiff's health.

107.    Those injuries were known by Defendants to be reasonably certain to arise, but, despite the certainty of such permanent brain injuries, Defendants encouraged Plaintiff to engage in conduct that they knew would result in serious physical harm, for their own economic benefit.

108.    As a result of the foregoing, Plaintiff is entitled to compensatory and punitive damages.

WHEREFORE, the Plaintiff demands judgment :

a.    For compensatory damages;

b.    For punitive damages;

c.    For reasonable attorney's fees;

d.    For such other relief as the Court may deem just.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiff


By:___/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated:  January 3, 2019

Howard F. Silber
LAW OFFICES OF HOWARD SILBER
2625 Townsgate Road Suite 330
Westlake Village, CA 91361
( 818) 706-8510

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all matters so triable.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiff


By: ___/s/ James E. Cecchi_____
JAMES E. CECCHI

Dated:  January 3, 2019

Howard F. Silber
LAW OFFICES OF HOWARD SILBER
2625 Townsgate Road Suite 330
Westlake Village, CA 91361
( 818) 706-8510